IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


EMMANUEL AZZUN,

               Plaintiff,

     Vs.                                       No.  09-4144-SAC

KANSAS DEPARTMENT OF
HEALTH AND ENVIRONMENT,

               Defendant.


MEMORANDUM AND ORDER

This employment discrimination case comes before the court on cross-motions for summary judgment. Plaintiff, acting pro se, claims that the Kansas Department of Health and Environment (KDHE) discriminated against him on the basis of his race, sex, national origin, and age by failing to hire him for multiple positions between 2005 and 2008. Plaintiff asserts that he applied for available positions and was more qualified than the persons ultimately hired by the KDHE. KDHE asserts that plaintiff failed to properly exhaust his claims, that better qualified candidates were hired for all positions, and that plaintiff has failed to show pretext as a matter of law.

Pro se complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89 (2007). *See Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170,1173-74 (10th Cir.1997) (quotations and citations omitted). The

court should not be the pro se litigant's advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991), and will not accept as true conclusory allegations unsupported by factual allegations. *Oxendine v. Kaplan*, 241 F.3d 1272 (10th Cir. 2001). In this case, the Court has granted the plaintiff much leeway in permitting him to file multiple responses to defendant's summary judgment motion or supplements to his own summary judgment motion,[1] instead of striking them as outside the briefing boundaries established by the rules, which are designed to achieve fundamental fairness to all parties. *See* D. Kan. Rule 56.1.

### Summary Judgment Standard

On summary judgment, the initial burden is with the movant to point out the portions of the record which show that the movant is entitled to judgment as a matter of law. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992), *cert. denied*, 506 U.S. 1013 (1992); Fed.R.Civ.P. 56(c)(2). In applying this standard, the court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Adler v. WalMart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998). This legal standard remains the same here, where the court is ruling on cross-motions for summary judgment, since each party still has the burden to establish the lack of a genuine issue of material fact and its entitlement to judgment as a matter of law. *See City of Shawnee, Kan. v. Argonaut Ins. Co.*, 546 F.Supp.2d 1163, 1172 (D.Kan. 2008). "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v.*

---

[1]These include Docket numbers 89, 92, 93, 94, 97, 98, 99, 100.

*Sudduth*, 608 F.2d 431, 433 (10th Cir.1979). To the extent the cross-motions overlap, however, the court addresses the legal arguments together.

**Facts**

The parties stipulated in the pretrial order to the following facts: 1) Plaintiff is a black male, born in Nigeria, and was over the age of 40 at all times relevant to this litigation; 2) Plaintiff applied for multiple positions with the KDHE between February 2005 and December 2008, but was not interviewed or selected for any position; 3) Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) and the Kansas Human Rights Commission (KHRC) on April 9, 2009, alleging employment discrimination under Title VII of the Civil Rights Act based on race, sex, and national origin; 4) Plaintiff was issued a right to sue letter on October 1, 2009, and filed this lawsuit on October 28, 2009. *See* Dk. 85, p. 3. Additional facts set forth in defendant's memorandum and supported by the record have not been contested by the plaintiff. *See* D.Kan.R. 56.1. They shall be included in the discussion below, as necessary.

Plaintiff generally contends that defendant's evidence is "altered, false and made up." Dk. 92, p. 1. *See* Dk. 93 p. 1 (alleging defendant's evidence is "deceitful, lies, adjusted make (sic) up paper copies"; alluding to perjury; and stating plaintiff's belief that Cindy Kraus's "information is very questionable and not correct.") *See also* Dk. 87, 89, 92-94. Plaintiff does not show the court any factual support for these propositions, and speculation does not suffice for evidence. *Martinez v. Wyoming, Dept. of Family Services,* 218 F.3d 1133, 1137 (10th Cir. 2000); *See Doan v. Seagate Technology, Inc.,*

82 F.3d 974, 977 (10th Cir.1996), *cert. denied*, 519 U.S. 1056 (1997). The affidavit of Cindy Kraus, KDHE's Human Resources Recruitment Manager,[2] attesting to the authenticity of the records produced in support of Defendant's Motion for Summary Judgment, is sufficient to overcome plaintiff's assertions. *See* Dk. 91-2. Plaintiff's other responses will be addressed below.

**ADEA claims**

KDHE contends that plaintiff's claims of age discrimination fail because they are not properly exhausted. Before bringing actions in federal court, Title VII and ADEA plaintiffs must first timely file an administrative charge with the EEOC, or its corresponding state agency- in this case, the KHRC. 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 633(b); *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999). *See also Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). Exhaustion of administrative remedies is a jurisdictional prerequisite to filing a Title VII claim in federal court. *Edmond v. Athlete's Foot Group*, 1997 WL 699053, at *1, 129 F.3d 130 (10th Cir.1997) (citations omitted).[3] Requiring exhaustion of administrative remedies is intended to give notice to the employer and to facilitate internal resolution of those issues. *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003).

Plaintiff's EEOC charge "checks the boxes" for race, sex, and national origin, but

---

[2]Plaintiff appears to confuse Cindy Kraus's position with the position of Human Resources Director.

[3]Timely filing is not a jurisdictional prerequisite, but filing itself is a jurisdictional prerequisite. *Jones v. Runyon*, 91 F.3d 1398, 1399 n.1 (10th Cir .1996), *cert. denied*, 520 U.S. 1115 (1997).

not for age, creating a presumption that he is not asserting an age discrimination claim. *See* Dk. 89, p. 2.

> The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box. *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir.1998). The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim. *Id.*

*Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). The text of plaintiff's EEOC charge does not explicitly or implicitly claim age discrimination. Instead, the only facts alleged are that the plaintiff applied for and was denied "multiple administrative positions with the Respondent from February 2005, to January 2009," and that this was "due to [his] race, African American, [his] sex, male, and [his] national origin, Nigeria." *Id.*, p. 2-3.

Attached to plaintiff's EEOC charge are notes of plaintiff's allegations apparently taken by an intake officer, stating:

> ... the [KDHE] tried to intimidate and threaten [plaintiff] with suppression and oppression," "sent him a letter to have a hearing...to indirectly take [his] license," "this is why they are not hiring him for any positions ," "National origin-Nigerian, ancestry, and male, and his honesty...this is connected/collaborated with Kansas Adult Care Executive, which refers individuals with their organization based on whether individual has a license issued by [KDHE].
> [Plaintiff] stated he was overqualified for the positions, stated they issued licenses to unqualified individuals to give them temporary emergency licenses to block [him] from getting administrative positions outside of the KDHE. [Plaintiff] stated he has a PhD in Health Care Administration and Applied Educational Studies.

Dk. 88, p. 8. Plaintiff's EEOC charge, although generic and vague, says nothing about age discrimination, and it is not reasonable to believe that age discrimination would be uncovered by an investigation of plaintiff's claims of race, sex, and national origin discrimination. *See generally Simms*, 165 F.3d at 1327. Nor do the allegations in

plaintiff's EEOC charge put defendant on notice of any age discrimination claim. Accordingly, plaintiff's age discrimination claims must be dismissed for lack of jurisdiction.

**Timeliness of Title VII claims - race, sex and national origin**

KDHE contends that none of plaintiff's claims for which he filed an EEOC/KHRC charge[4] were timely filed. Plaintiff generally alleges that he "filed on time," Dk. 92, p. 3, but does not dispute by citation to the record the specific dates on which he applied for positions or filed his administrative charge, as demonstrated by the record produced by KDHE.

Although plaintiff's brief alleges that he applied for over 50 positions with KDHE, neither plaintiff's EEOC charge nor his summary judgment briefs, nor plaintiff's supplemental materials support that assertion with copies of applications, specific position numbers or descriptions, specific dates, or any other evidence which would tend to contradict KDHE's evidence regarding his applications. Plaintiff's EEOC charge merely alleges that plaintiff was denied "multiple administrative positions with [KDHE] from February, 2005 to January 2008." Dk. 88, p. 5. Plaintiff's assertion that KDHE must have thrown his applications in the trash is unsupported. The number of applications is immaterial, however, unless those applications were recent enough to trigger actual or implied knowledge of plaintiff's non-selection within the relevant 300-day period.

"The filing deadlines associated with a Title VII charge are integrated into the

---

[4]The ADEA also requires that plaintiff file his EEOC charge within 300 days of the alleged discrimination. 29 U.S.C. §§ 626(d)(2), 633(b). Had plaintiff filed age discrimination charges, they would also be subject to this analysis.

statutory section that delineates the various other steps a prospective plaintiff must satisfy before being given the keys to the courthouse door to file a complaint." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1168 (10th Cir. 2007). Timely filing is a prerequisite to a civil suit under Title VII. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974).[5] In a deferral state such as Kansas, a plaintiff alleging a violation of Title VII must file an administrative charge with the EEOC within 300 days of the challenged action. *See* 42 U.S.C. § 2000e-5(e); *Davidson v. America Online, Inc.*, 337 F.3d 1179 (10th Cir. 2003). Plaintiff filed his EEOC charge on April 9, 2009. Therefore, KDHE cannot be liable for any violation that occurred before June 17, 2008. KDHE shows the court that the application period for all positions for which plaintiff applied were closed more than 300 days before plaintiff's EEOC filing, except for one which plaintiff applied for after he filed his EEOC charge. *Dk. 91, Exh. A and attachments.*

**No continuing violation theory**

Plaintiff appears to believe that one claim was timely filed,[6] thus all his claims were timely filed. But the continuing violation doctrine does not apply to failure to hire claims because a failure to hire is the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued. *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1185 (10th Cir. 2003). Accordingly, where a plaintiff pursues multiple disparate treatment claims based on discrete discriminatory acts, the

---

[5]Timely filing is not a jurisdictional prerequisite, but filing itself is a jurisdictional prerequisite. *Jones v. Runyon*, 91 F.3d 1398, 1399 n. 1 (10th Cir .1996).

[6]*See* Dk. 87, p. 2 (alleging that plaintiff's "last application was around late December of 2008.") The record shows no applications, however, between April of 2008 and April of 2009.

limitations period will begin to run for each individual act from the date on which the underlying act occurs. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 n. 9 (2002). *See Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

**Accrual based on implied knowledge of non-selection**

KDHE errs in assuming that the date on which the underlying act occurs (non-selection) is the date on which the application period for each position closed. The Tenth Circuit held in *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 558 (10th Cir.1994) that a cause of action generally accrues under the Age Discrimination in Employment Act (ADEA) "on the date the employee is notified of an adverse employment decision," not at the time the consequences of the decision are felt. *See Bennett v. Coors Brewing Co.,*189 F.3d 1221, 1234 (10th Cir. 1999). The Tenth Circuit later applied the same rule in a disability failure to hire case, finding that the cause of action accrued when the applicant was told that all available positions had been filled, even though he did not suspect discrimination until his later application was also rejected. *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003). The same rule applies to actions under Title VII, such as this one. In general, "a cause of action accrues 'on the date the employee is notified of an adverse employment decision by the employer.' " *Haynes v. Level 3 Communications, LLC,* 456 F.3d 1215, 1222 (10th Cir. 2006) (Title VII, ADA and ADEA case, quoting *Davidson*, 337 F.3d at 1187), *cert. denied*, 549 U.S. 1252 (2007). *See also Delaware State Coll. v. Ricks*, 449 U.S. 250, 259 (1980) (national origin discrimination case holding that the limitations period "commenced ... when the tenure decision was made and [the professor] was notified," even if the discrimination became more obvious or its effects more painful at a later date).  Notice or knowledge of an

employer's discriminatory motivation is not necessary. *Davidson*, 337 F.3d at 1187, citing *Hulsey*, 43 F.3d at 558-559. Although the facts are distinguishable in this case, the Court finds that a cause of action generally accrues under Title VII on the date the employee is notified of an adverse employment decision, not at some unknown earlier date when the decision was made.

It is undisputed here, however, that plaintiff was not expressly notified that he was not selected for most of the positions for which he applied. KDHE admits that supervisors are responsible for notifying non-selected applicants of the disposition of the position (*i.e.* position was filed, or position will not be filled due to budget constraints, etc.), and are instructed to provide a copy of the regret letters to human resources for the recruitment file. Dk. 91, Exh. 2, para. 26. (Kraus aff.) Nonetheless, the facts of record show that plaintiff sent applications to KDHE and thereafter heard nothing from KDHE for most, if not all, of plaintiff's applications for which KDHE has records.[7] Plaintiff therefore lacked actual knowledge of the adverse employment events on the date they occurred.

The court thus considers an implied knowledge accrual date. Although the Tenth

_____

[7]Plaintiff asserts that he never got any response from KDHE to his applications in 2005 - 2008. But the record shows that KDHE sent plaintiff a regret letter for three positions: Requisition no.149471 on March 31, 2006 and Requisition no.149488 on January 24, 2006, neither of which is within required 300-day time limit; and Requisition no.163637 on August 13, 2009, for a position which opened after plaintiff filed his EEOC charge. Although the record does not show that plaintiff was sent regret letters for any other positions, plaintiff does not allege and offers no evidence that the reason KDHE failed to follow its regret letter policy was a discriminatory reason. "The mere failure of a company's employees to follow their employer's manuals and written directives, without more, does nothing to suggest discrimination as opposed to perhaps, say, laxity on the part of company employees." *Hinds v. Sprint/United Management Co.,* 523 F.3d 1187, 1199 (10th Cir. 2008).

Circuit has not addressed the issue, other circuits hold that the limitations period on an employment discrimination claim "begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred." *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000); *Merrill v. Southern Methodist Univ.*, 806 F.2d 600, 604-05 (5th Cir.1986) (limitations period in Title VII cases commences to run on date when plaintiff knows or reasonably should know that discriminatory act has occurred, not on date victim first perceived that discriminatory motive caused act). Although the parties have not cited relevant cases, the Court finds that plaintiff's constructive knowledge that he was not hired for a position will start the 300-day clock running as to that position.

The mere passage of enough time after the application period closes for a specific position, without any contact from the employer, would put a reasonable applicant on notice to inquire as to the status of one's application and to discover the fact he was not selected. The Court notes that the three regret letters allegedly sent to plaintiff by KDHE were dated approximately two to two-and-one-half months after the respective application periods closed. Accordingly, the court believes that a period of 90 days after each application period closed is a sufficient period of time in this case to lead a reasonable applicant who had not heard anything from the potential employer to conclude that he was not hired for the desired position, and to start the running of the 300-day period.

### Application

Plaintiff has failed to controvert KDHE's showing that the positions associated

with requisition numbers 155775, 156970, and 158205[8] were not KDHE positions, and that the KDHE had no involvement in hiring for them. Dk. 91, Exh. A, p. 6. Although plaintiff generally alleges that KDHE "collaborated" with Adult Care homes or associations, and is "very involved and influential in the hiring of nursing home administrator[s] ... in health care facilities," Dk. 98, p. 1, plaintiff offers no evidence in support of that assertion. This Court must base its rulings upon the facts shown by the record, not upon bare assertions of the parties.

As to all positions for which the plaintiff claims he applied in 2005 or before, the Court has no hesitance in finding that plaintiff failed to timely file a charge with the EEOC, as plaintiff would have known long before June 17, 2008, that he was not selected for those positions. (Requisition numbers 142568, 144844, 145318, 145883, 146689, 147726, and 147727.) The same is true for those positions for which plaintiff applied in 2005 and 2006. (Requisition numbers 148741, 149234, 149471, 149488, 150109, 150268, and 150777.) As to plaintiff's assertions that he applied for three open positions with the KDHE in 2007, plaintiff fails to controvert the KDHE's showing that he did not apply for any of them, and also fails to show a timely EEOC filing for any of them. (Requisition numbers 155067, 156118, and 157351.) Similarly, the record reflects no application by plaintiff for two of three positions for which plaintiff claims he applied in 2008. (Requisition numbers 158799 and 159297.)

This leaves for consideration only plaintiff's application in 2009, which was filed after plaintiff's EEOC charge (Requisition no.163637), and one application in 2008

---

[8]Plaintiff's application for position no.158205 was processed as an application for position no. 158520, which was a KDHE position.

(Requisition no.158520). Plaintiff appears to contend that his allegation of discriminatory failure to hire in 2009 is part of an ongoing pattern of conduct that was included in his prior EEOC complaint which noted defendant's earlier failures to hire. This raises once again the spectre of a continuing violations doctrine.[9] However, the Tenth Circuit has held that private plaintiffs may not utilize the pattern-or-practice method of proof as it is available only to the government and class actions. *Semsroth v. City of Wichita,* 304 Fed.Appx. 707, 714-715, 2008 WL 5328466, 4 (10th Cir. 2008). Instead, the exhaustion requirement is equally applicable to discrete acts occurring after the filing of a charge, thus, where a failure to promote claim occurs after the filing of the charge, the plaintiff must file another EEOC charge. *See Jones*, 502 F.3d at 1186 (finding any discreet acts of adverse employment actions occurring after the plaintiff submitted his administrative charge would not fall within the scope of his charge.) Plaintiff has failed to exhaust his administrative remedies as to his 2009 application, Requisition no.163637.

As to Requisition no.158520, the application period was open from November 1, 2007 to March 24, 2008. KDHE admits that the plaintiff applied for this position, and that another person was hired for it on April 6, 2008, but does not contend that it notified plaintiff of his non-selection for that position. The court thus deems the plaintiff to have had constructive knowledge of his non-selection 90 days after the application period closed, *i.e.*, on June 24, 2008. Because plaintiff filed his EEOC claims less than 300 days later, this claim is timely. The Court shall grant KDHE's motion to dismiss all

---

[9]The *Morgan* Court expressly left open whether the continuing violations doctrine applied to the pattern or practice method of proof.

of plaintiff's claims as untimely except for his claim based on requisition number 158520, which is discussed below.

### Qualifications/pretext

Under the familiar *McDonnell Douglas* burden-shifting framework, the Court analyzes Title VII claims based on circumstantial evidence, as plaintiff's claims are, in three steps. First, a plaintiff opposing summary judgment must make a prima facie case of discrimination. *Young v. Dillon Companies, Inc.*,468 F.3d 1243,1249 (2006). To make a prima facie case of failure to hire in this case, the plaintiff must show the following: (1) the plaintiff applied and was qualified for a job for which the employer was seeking applicants; (2) despite being qualified, the plaintiff was rejected; and (3) some additional evidence to support the inference that the plaintiff was not hired because of a discriminatory motive based upon the employee's race, sex, or national origin. *See Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 983 (10th Cir. 2008).

Secondly, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Young*, 468 F.3d at 1249. This burden is "exceedingly light." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160 (10th Cir. 2007). If this burden is met, the burden then shifts back to the plaintiff, who must prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination. *Id.* A claim of pretext need not be supported with direct evidence, but may be based on " 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's claimed legitimate, non-discriminatory reason such that a rational trier of fact could find the reason unworthy of belief." *Morgan v. Hilti Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997).

13

**158520**

KDHE Position Number K0218406, Requisition No. 158520, Public Service Executive I Worksite Wellness Specialist, was open for applications from November 1, 2007 until March 24, 2008. Plaintiff timely submitted an application to the KDHE, but listed an erroneous Requisition number., *i.e.*,158205, which was for a position with the Kansas Department of Commerce, not with KDHE. Nonetheless, plaintiff's application for Requisition No.158205 was considered an application for Requisition No.158520, the KDHE position. Its Position Description states only one minimum qualification: "Bachelor's degree in public health or a related field." Dk. 91, Exh. A-45 (AG 000105).

After receiving plaintiff's application, KDHE determined that plaintiff did not meet the minimum qualifications of the position because his degrees were in Business and Administration, not Public Health or a related field. Dk. 91, Exh. A, p. 14. On April 6, 2008, KDHE hired Ms. Koonce for the position. KDHE additionally contends that the plaintiff was not hired for the position because Ms. Koonce was more qualified than was the plaintiff. (*See* AG000840.) Ms. Koonce had a bachelor's degree in Health Promotion & Communication, and a Master's degree in Community Health Education. Dk. 91, Exh. A-46, AG 000797.

Plaintiff alleges that he met the minimum qualifications for this and for every position for which he applied. Dk. 92, p. 1. In support, he shows the court his transcripts, and alleges, "Plaintiff (sic) college transcripts will speak for it itself" (sic). Dk. 92, p. 1. These exhibits evidence plaintiff's bachelor's of science degree in Business Management in 1992, his Masters degree in Health Care Administration in 1996, and his Doctor of Philosophy degree in 1999. Dk. 93, Exh. 1, pp. 5-14. Plaintiff

fails to show, however, that these transcripts were part of his application package or were sent to KDHE. KDHE concedes that plaintiff's applications referenced his bachelor's and master's degrees, but correctly asserts that they failed to note his doctor's degree. *See* Dk. 91, Exh. A-1 through A-9.

Even had plaintiff submitted his transcripts to KDHE, plaintiff has not shown any evidence that his B.S. in Business Management or his Masters in Health Care Administration is, in fact, a degree "in public health or a related field," as is required to meet this position's minimum qualifications. Although plaintiff's Bachelor's degree in Business Management emphasized Gerontology, and his Masters degree in Health Care Administration may or may not have included some studies related to public health, the court cannot find as a matter of law that plaintiff's degrees are in public health or a related field, and the classes listed on the materials which he submitted to KDHE in support of his applications do not compel such a finding. Absent a showing of arbitrariness or unreasonableness in KDHE's finding that plaintiff failed to meet the minimum qualification for this position, the court is not at liberty to find any inference of pretext in KDHE's decision, even though that decision may be in error.

Plaintiff asserts that he holds licenses from seven states as a Nursing Home Administrator,[10] and faults KDHE for relying upon his early applications which listed only his Kansas and Oklahoma licenses. The record shows that plaintiff's applications listed his licenses as an adult nursing home administrator in Kansas through June of

_____

[10]Plaintiff's exhibits include licenses from Kansas, Massachusetts, Arkansas, and a provisional license from Texas, but the effective dates and other information are not all legible. *See* Dk. 97, Exh. 1, p. 5.

2005, and in Oklahoma through December of 2005, and stated his experience as a nursing home administrator. Dk.91, pp. 30-31. But plaintiff fails to show the Court that he submitted applications to KDHE which listed his other licenses, or to show how those licenses related to the positions for which he applied, which were not Nursing Home Administrator positions.

Plaintiff additionally contends that KDHE's stated reason for his non-selection (failure to meet the minimum requirements) contradicts its earlier reasons. Dk. 92, p. 1. Plaintiff does not state what the KDHE's earlier reasons were, however, or how they contradict the reasons currently given to this Court, thus no inference of pretext arises.

Assuming, *arguendo*, that plaintiff did meet the minimum qualification for the position, and that the plaintiff has made a prima facie case as to this position, KDHE asserts that it did not hire the plaintiff because the candidate it hired was better qualified. This constitutes a legitimate, non-discriminatory reason for the decision and shifts the burden to plaintiff to show that the reason is pretextual. Plaintiff has not compared his qualifications to those of Ms. Koonce, or shown that KDHE actually considered him to be better qualified for the position, or shown that KDHE's determination of qualifications was arbitrary or unreasonable. When comparing candidates for the same position, the court is willing to infer pretext only when "the facts assure ... that the plaintiff is better qualified than the other candidates for the position." *Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003). *See Sanchez v. Philip Morris Inc.*, 992 F.2d 244, 247 (10th Cir.1993) ("It is conceivable that a plaintiff ... could be so overwhelmingly better qualified than another applicant that on this evidence alone a trial court could properly find pretext") The record fails to demonstrate

that the plaintiff is so much better qualified than Ms. Koonce for this particular position that this Court could find an inference of pretext.

Plaintiff's only other assertion of discrimination is that when he was at a conference/seminar in early 2005, where "most of the officials" were also in attendance, he asked if he were the only black administrator there. He states that since then, "it has been hell" for him. Dk. 88, p. 2. Plaintiff has failed to show any knowledge of this event by anyone making hiring decisions at KDHE, or to otherwise raise a material question of fact that his race, national origin, or sex was the real reason why he was not hired.

**163637**

In an abundance of caution, the court addresses this position on the merits, in the event its ruling above is in error and it has subject matter jurisdiction over this claim.

KDHE Position Number K0218406, Requisition No. 163637, Public Service Executive I, Worksite Wellness Specialist, was open for applications from May 29, 2009 until June 19, 2009. The minimum qualifications for this position were a Bachelor's degree and one year of experience in planning, organizing and directing the work of a department, program or agency.

On May 31, 2009, plaintiff submitted an application for this position. KDHE determined that plaintiff's application lacked information regarding his employment history, work experience, and reference information. *See* Dk. 91, Exh. A-53. Accordingly, on June 1, 2009, KDHE sent plaintiff an email informing him that his application for this position was incomplete and stating that his application would not be

considered for employment unless the complete application was received by the closing date. (Ex. A para.108, Kraus Aff.; Ex. A-52, AG 001038). KDHE did not thereafter receive a completed application from the plaintiff for this position. Because KDHE deemed plaintiff's application to be incomplete, it did not consider him for this position. On August 13, 2009, Ms. Macchi sent a letter informing plaintiff that he was not hired for the position. (Ex. A para. 111, Kraus Aff.; Ex. A-54, AG 001289). On November 8, 2009, KDHE hired Ms. Slater for that position. (Ex. A para.110, Kraus Aff.).

Plaintiff challenges KDHE's determination that he failed to submit a complete application for position 163637, stating that he did submit his transcripts, and that they were available to KDHE because his prior applications to KDHE positions were retained by the Kansas Department of Administration by virtue of his State application and permanent record. Dk. 92, p. 2. In support of this allegation, plaintiff shows the court a copy of his State of Kansas Employment Application containing his applicant identification number, and listing the "State Agency" as "KDHE." Dk. 93, Exh. A., pp. 28-36. Although plaintiff appears to contend that the State received and retained his resume and his transcript, making it accessible to KDHE for all of his subsequent applications for positions within that department, that contention is not supported by the facts. First, plaintiff's State of Kansas application itself states: "Submit this application form to the agency which has the vacancy for which you are applying: Do not submit this form to any other location." *Id.* Secondly, the letter sent by the KDHE to the plaintiff informing him of the incomplete status of his application for this very position states in bold: **"Required documentation must be received each time you apply for a**

18

**position with the agency. Prior documentation attached to other applications will not be transferred between applications**." Dk. 91, Exh. A-52, AG 001038.

Plaintiff additionally states his belief that KDHE may have discriminated against him because he is weak in communication, and alleges this is stereotyping. Dk. 92, p. 2. This contention is speculative and unsupported by any evidence, and thus fails to raise a material question of fact on his allegations of discrimination.

Plaintiff further contends that KDHE arbitrarily employs whomever it desires, and issues temporary nursing home administrator licenses to unqualified persons to cover up its discrimination against him or to block him from getting administrative positions outside KDHE. In support of this assertion, plaintiff attaches a list of Temporary Adult Care Home Administrator Licenses issued by KDHE from 2005 to 2010. Dk. 92, Exh. A. pp. 4, 15-27. An email contained in plaintiff's exhibit sheds some light on plaintiff's assertion in saying:

> "Check ketch flower-former administrator at Hillside nursing center in De soto,ks. (sic) He did not meet the criteria/requirements to have a temporary license. They knew that I was to work there and brought him in because he was a black man. The owner did not know what was happenning.(sic)

Dk. 93, Exh.1, p.15 (from plaintiff to glueger@kdheks.gov, dated Fri, May 1, 2009 at 9:07:23 a.m., regarding plaintiff's Open Records List). The Court presumes that plaintiff's email alludes to a person named "[F]OWLER KETCHEWMI," who had a temporary license from 11/28/08 to 11/27/09, but the remainder of plaintiff's assertions are speculative and unsupported by any evidence of record.

In summary, plaintiff has merely shown his disagreement with KDHE's assessment of his qualifications and of the completeness of his application. This is

insufficient to raise a genuine issue of material fact on plaintiff's claims of race, national origin, and sex discrimination. The court's role is to prevent or remedy unlawful employment practices, not to second guess an employer's business judgment, even if it seems in hindsight that the action taken constituted poor business judgment. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007); *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004).

Throughout his summary judgment materials, plaintiff repeatedly alludes to his requests for change of venue and to bring in the FBI. Both of these motions were previously considered and denied. *See* Dk. 11, 76, 83. The Court assumes that plaintiff may desire a change of venue because he presumes local bias in favor of the KDHE, which like this Court is based in Topeka. This Court, however, is not a state court, but a federal court, whose jurisdiction is designed in part to achieve fairness and neutrality for all parties by avoiding the proverbial "home cooking." Further, in civil cases such as this, the rules require the parties to conduct their own investigation and do not permit the Court to order the FBI to do so. No reason to reconsider the Court's previous rulings on these issues has been shown.

Plaintiff is correct that discrimination and retaliation are not acceptable in this country, but such claims must be properly exhausted and supported by evidence, not by mere speculation. For all the reasons set forth above, plaintiff's motion for summary judgment shall be denied and KDHE's motion for summary judgment shall be granted.

**Motion for monetary judgment**

In this separate motion, plaintiff asks the court for judgment requiring the KDHE to make a partial monthly monetary payment to him because of defendant's actions

and plaintiff's responsibilities. Plaintiff's motion alleges that since the date he filed his cases against KDHE, no employer has called him for anything, and he believes that KDHE is trying to "block, stop, [or] punish [him] from getting or finding a job." Dk. 62. Plaintiff states that he has a Kansas Nursing Home Administrator's license and six licenses in different states, but when another state contacts KDHE for verification, the calls or e-mails to him (apparently from potential employers outside the State of Kansas) stop coming. Plaintiff concedes that he has "no direct proof of who is doing this but this is common sense." Dk. 62. *See also* Dk. 98, 100.

The Court construes this as an allegation of retaliation by the KDHE. No claim of retaliation is included, however, in the pretrial order which governs the parties' claims and defenses. *See Youren v. Tintic School Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003). Accordingly, summary judgment is warranted on any purported claim of retaliation in this case, and plaintiff's motion for monetary judgment must be denied.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (Dk. 87) is denied and that defendant's motion for summary judgment (Dk. 90) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for monetary judgment (Dk. 62) is denied.

Dated this 2nd day of December, 2010, at Topeka, Kansas.

s/ Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge